IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| ANTONIO ROUNDTREE, | ) | CASE NO. 3:16 CV 778 |
| | ) | |
| Petitioner, | ) | |
| | ) | JUDGE JAMES G. CARR |
| v. | ) | |
| | ) | MAGISTRATE JUDGE |
| TERRY TIBBALS, Warden, | ) | JONATHAN D. GREENBERG |
| | ) | |
| Respondent. | ) | **REPORT AND RECOMMENDATION** |

### INTRODUCTION

Petitioner Antonio Roundtree, a prisoner in state custody, has filed in this Court a *pro se* petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254, challenging the constitutionality of his conviction and sentence in *State v. Roundtree*, Case No. CR-0201-301-654.  (Doc. No. 1.) Respondent Terry Tibbals[1] has filed a return of writ.  (Doc. No. 8.)  Roundtree has filed a traverse, to which Respondent has replied.  (Doc. Nos. 10, 12.)

This matter is before the undersigned by an automatic order of reference under Local Rule 72.2 for preparation of a report and recommendation on Roundtree's petition or other case-dispositive motions.[2]  For the reasons stated below, the Court recommends Roundtree's petition be  DISMISSED.

---

[1] Terry Tibbals was the warden of the London Correctional Institution, located in London, Ohio.  Roundtree was incarcerated there when he filed his petition.  (Doc. No. 1 at 1.)  Roundtree is now imprisoned at the Allen Correctional Institution, located in Lima, Ohio, where James Haviland is the warden.  (Doc. No. 6 at 1.)

[2] This case was transferred to the undersigned from Magistrate Judge Nancy A. Vecchiarelli upon her retirement.

FACTUAL BACKGROUND

Ohio's Sixth District Court of Appeals set forth the following facts underlying

Roundtree's convictions:

> {¶ 2} The undisputed facts relevant to the issues raised on appeal are as follows. On the night of December 15, 2012, Ruben Rodriguez and his girlfriend went to the Pour House, a bar on Bennett St. in Toledo, Ohio. Once there, Rodriguez saw appellant, whom he had known for several years, enter with a friend. Shortly thereafter, the two men left the bar and reportedly went outside to fight. As a result, Rodriguez was stabbed in the neck and back. Before being taken to the hospital, Rodriguez told the responding officer that appellant had stabbed him with a knife. There were no witnesses to the fight and no weapon was found at the scene. Appellant left the bar before police arrived. Rodriguez's girlfriend, Amanda Salazar, gave police appellant's name and a description of his car.

> {¶ 3} Appellant testified at trial that he called a federal agent and turned himself in.

*State v. Roundtree*, No. L-14-1052, 2015 WL 3617943, at *1 (Ohio Ct. App. June 5, 2015).

These facts "shall be presumed to be correct," and Roundtree has the burden of rebutting

the presumption of correctness by clear and convincing evidence.  28 U.S.C. § 2254(e)(1);

*Warren v. Smith*, 161 F.3d 360-61 (6th Cir. 1998).

PROCEDURAL BACKGROUND

A.     Trial Court

On April 26, 2013, the Lucas County Grand Jury indicted Roundtree on one count of

felonious assault in violation of Ohio Rev. Code § 2903.11(A)(2).  (Doc. No. 7, Exh. 1.)

Roundtree entered a plea of not guilty to the charge.  (Doc. No. 7, Exh. 2.)

The case proceeded to a jury trial on February 3, 2014.  (Doc. No. 9-1 at 1.)  On February

4, 2014, the jury found Roundtree guilty of felonious assault.  (Doc. No. 7, Exh. 3.)  On February

2

20, 2014, the trial court conducted a sentencing hearing and sentenced Roundtree to a term of eight years in prison.  (Doc. No. 7, Exh. 3.)

### B.     Direct Appeal

Roundtree, through new counsel, filed a timely appeal to the Sixth District Court of Appeals.  (Doc. No. 7, Exh. 4.)  In his appellate brief, he raised the following assignments of error:

1.     The Appellant was denied a fair trial as the trial court erred in ruling that statements supporting Appellant Roundtree's self defense affirmative defense were excluded as inadmissible hearsay.

2.     The conviction against Appellant Roundtree was against the manifest weight of the evidence.

3.     The conviction against Appellant Roundtree was not supported by the sufficiency of the evidence.

4.     Prosecutorial misconduct during the trial deprived Appellant of a fair trial in violation of his rights under the Fifth, Sixth, and Fourteenth Amendments to the United States Constitution and the corresponding provisions of the Ohio Constitution.

5.     The trial court abused its discretion in sentencing Appellant to a maximum term.

6.     The cumulative errors deprived Appellant of a fair trial in violation of his rights under  Fifth, Sixth, and Fourteenth Amendments to the United States Constitution and the corresponding provisions of the Ohio Constitution.

(Doc. No. 7, Exh. 5 (capitalization altered).)  The State filed a brief in response.  (Doc. No. 7, Exh. 6.)

On June 5, 2015, the Ohio appellate court affirmed the trial court's judgment.  (Doc. No. 7, Exh. 8.)

Roundtree, acting *pro se*, filed a timely appeal of the appellate court's judgment to the Ohio Supreme Court.  (Doc. No. 7, Exh. 9.)  In his memorandum in support of jurisdiction, he set forth the following propositions of law:

1.    The Appellant was denied a fair trial and prohibited from putting on a complete defense when statements in support of his self-defense affirmative defense were excluded as hearsay.

2.    There was insufficient evidence to sustain the conviction and the conviction was against the manifest weight of the evidence.

3.    Prosecutorial misconduct during the trial deprived Appellant of a fair trial in violation of the Fifth, Sixth, & Fourteenth Amendments to the United States Constitution and Article 1[,] § 10 of the Ohio Constitution.

4.    The cumulative errors deprived the [A]ppellant of a fair trial and due process [under the] Fifth, Sixth, & Fourteenth Amendments to the United States Constitution and Article 1[,] § 10 of the Ohio Constitution.

(Doc. No. 7, Exh. 10.)  The State waived a memorandum in response.  (Doc. No. 7, Exh. 11.)

The Ohio Supreme Court declined jurisdiction over the appeal on September 30, 2015. (Doc. No. 7, Exh. 12.)

On November 18, 2015, Roundtree filed a *pro se* petition for writ of certiorari in the United States Supreme Court.  (Doc. No. 7, Exh. 13.)  The petition was denied on February 29, 2016.  (Doc. No. 7, Exh. 14.)

**C.    Post-Conviction Proceedings**

Meanwhile, Roundtree filed in the trial court a *pro se* motion to vacate or set aside the judgment of conviction or sentence on April 14, 2014.  (Doc. No. 7, Exh. 15.)  He asserted the following two claims:

1.    Attorney wasn't allowed to cross exam[ine] about certain situation.

2.      Attorney never subponead [*sic*] a witness I asked him too [*sic*]. (Lauren McKinney)

(Doc. No. 7, Exh. 15.)  The court denied the motion.  (Doc. No. 7, Exh. 16.)  The trial court's

docket indicates that Roundtree did not appeal that judgment.  (Doc. No. 7, Exh. 17 at 159.)

### FEDERAL HABEAS CORPUS

Roundtree filed the *pro se* petition for writ of habeas corpus now before this Court on

March 30, 2016.  (Doc. No. 1.)  The petition asserts the following two grounds for relief:

1.      I was denied [d]ue [p]rocess, a [f]air [t]rial, and the right to present a complete defense when the trial court excluded testimony in support of my affirmative defense in violation of the 5th, 6th, & 14th Amendments to the U.S. Constitution.

2.      The State committed prosecutorial misconduct and denied me due process and a fair trial in violation of the 5th, 6th and 14th Amendments to the U.S. Constitution when it misled the jury into believing that they were not allowed to consider the altercation inside the bar in their deliberations.

(Doc. No. 1 at 5, 6.)

On July 6, 2016, Respondent filed a return of writ.  (Doc. No. 8.)  On August 8, 2016,

Roundtree filed a traverse.  (Doc. No. 10.)  On August 16, 2016, Respondent filed a reply to the

traverse.  (Doc. No. 12.)

### STANDARDS OF REVIEW

#### A.      AEDPA Review

Roundtree's petition for writ of habeas corpus is governed by the Antiterrorism and

Effective Death Penalty Act of 1996 ("AEDPA"), as it was filed after the Act's 1996 effective

date.  *Lindh v. Murphy*, 521 U.S. 320, 336 (1997); *Murphy v. Ohio*, 551 F.3d 485, 493 (6th Cir.

2009).  AEDPA, which amended 28 U.S.C. § 2254, was enacted "to reduce delays in the

execution of state and federal criminal sentences, particularly in capital cases, and 'to further the

5

principles of comity, finality, and federalism.'" *Woodford v. Garceau*, 538 U.S. 202, 206 (2003) (quoting *(Michael) Williams v. Taylor*, 529 U.S. 420, 436 (2000)).  The Act "recognizes a foundational principle of our federal system:  State courts are adequate forums for the vindication of federal rights." *Burt v. Titlow*, 134 S. Ct. 10, 15 (2013).  It therefore "erects a formidable barrier to federal habeas relief for prisoners whose claims have been adjudicated in state court." *Id.*

One of AEDPA's most significant limitations on district courts' authority to grant writs of habeas corpus is found in § 2254(d).  That provision forbids a federal court from granting habeas relief with respect to a "claim that was adjudicated on the merits in State court proceedings" unless the state-court decision either:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

Habeas courts review the "last *explained* state-court judgment" on the federal claim at issue.  *Ylst v. Nunnemaker*, 501 U.S. 797, 805 (1991) (emphasis original).  A state court has adjudicated a claim "on the merits," and AEDPA deference applies, regardless of whether the state court provided little or no reasoning at all for its decision.  *Harrington v. Richter*, 562 U.S. 86, 99 (2011).

"Clearly established Federal law" for purposes of § 2254(d)(1) "is the governing legal principle or principles set forth by the Supreme Court at the time the state court renders its decision." *Lockyer v. Andrade*, 538 U.S. 63, 71-72 (2003).  It includes "only the holdings, as

6

opposed to the dicta, of [Supreme Court] decisions." *White v. Woodall*, 134 S. Ct. 1697, 1702 (2014) (internal quotation marks and citations omitted).  The state-court decision need not refer to relevant Supreme Court cases or even demonstrate an awareness of them; it is sufficient that the result and reasoning are consistent with Supreme Court precedent.  *Early v. Packer*, 537 U.S. 3, 8 (2002) (per curiam).  And a state court does not act contrary to clearly established law when the precedent of the Supreme Court is ambiguous or nonexistent.  *See, e.g., Mitchell v. Esparza*, 540 U.S. 12, 17 (2003) (per curiam).

A state-court decision is contrary to "clearly established Federal law" under § 2254(d)(1) only "if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts."  *Williams v. Taylor*, 529 U.S. 362, 412-13 (2000). And "review under § 2254(d)(1) is limited to the record that was before the state court that adjudicated the claim on the merits."  *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011).

A state-court decision is an "unreasonable determination of the facts" under § 2254(d)(2) only if the court made a "clear factual error."  *Wiggins v. Smith*, 539 U.S. 510, 528-29 (2003). The petitioner bears the burden of rebutting the state court's factual findings "by clear and convincing evidence."  *Burt*, 134 S. Ct. at 15; *see also Rice v. White*, 660 F.3d 242, 250 (6th Cir. 2011).  This requirement mirrors the "presumption of correctness" AEDPA affords state-court factual determinations, which only can be overcome by clear and convincing evidence.  28 U.S.C. § 2254(e)(1).  The Supreme Court has cautioned, "'a state-court factual determination is not unreasonable merely because the federal habeas court would have reached a different

conclusion in the first instance.'" *Burt*, 134 S. Ct. at 15 (quoting *Wood v. Allen*, 558 U.S. 290, 301 (2010)).

Indeed, the Supreme Court repeatedly has emphasized that § 2254(d), as amended by AEDPA, is an intentionally demanding standard, affording great deference to state-court adjudications of federal claims.  The Court has admonished that a reviewing court may not "treat[] the reasonableness question as a test of its confidence in the result it would reach under de novo review," and that "even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Harrington*, 562 U.S. at 102; *see also Schriro v. Landrigan*, 550 U.S. 465, 473 (2007) ("The question under AEDPA is not whether a federal court believes the state court's determination was incorrect but whether that determination was unreasonable - a substantially higher threshold.").  Rather, § 2254(d) "reflects the view that habeas corpus is a guard against extreme malfunctions in the state criminal justice systems" and does not function as a "substitute for ordinary error correction through appeal." *Harrington*, 562 U.S. at 102-03 (internal quotation marks omitted).  Thus, a petitioner "must show that the state court's ruling . . . was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id.* at 103.  This is a very high standard, which the Court readily acknowledges: "If this standard is difficult to meet, that is because it is meant to be." *Id.* at 102.

## B.    Exhaustion and Procedural Default

Under AEDPA, state prisoners must exhaust all possible state remedies, or have no remaining state remedies, before a federal court will review a petition for a writ of habeas corpus.  28 U.S.C. § 2254(b) and (c); *see also Rose v. Lundy*, 455 U.S. 509 (1982).  This entails

8

giving the state courts "one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999).  In other words, "the highest court in the state in which the petitioner was convicted [must have] been given a full and fair opportunity to rule on the petitioner's claims." *Manning v. Alexander*, 912 F.2d 878, 881 (6th Cir. 1990).  The exhaustion requirement, however, "refers only to remedies still available at the time of the federal petition." *Engle v. Isaac*, 456 U.S. 107, 125 n.28 (1982).  It "does not require pursuit of a state remedy where such a pursuit is clearly futile." *Wiley v. Sowders*, 647 F.2d 642, 647 (6th Cir. 1981).

Procedural default is a related but "distinct" concept from exhaustion. *Williams v. Anderson*, 460 F.3d 789, 806 (6th Cir. 2006).  Procedural default occurs when a habeas petitioner fails to obtain consideration of a federal constitutional claim by state courts because he failed to:  (1) comply with a state procedural rule that prevented the state courts from reaching the merits of the petitioner's claim; or (2) fairly raise that claim before the state courts while state remedies were still available. *See, e.g., Wainwright v. Sykes*, 433 U.S. 72, 80, 84-87 (1977); *Engle*, 456 U.S. at 125 n.28; *Williams*, 460 F.3d at 806.  In determining procedural default, the federal court again looks to the last explained state-court judgment. *Ylst*, 501 U.S. at 805; *Combs v. Coyle*, 205 F.3d 269, 275 (6th Cir. 2000).

Where a state court declines to address a prisoner's federal claims because the prisoner has failed to meet a state procedural requirement, federal habeas review is barred as long as the state judgment rested on "independent and adequate" state procedural grounds. *Coleman v. Thompson*, 501 U.S. 722, 729 (1991).  To be independent, a state procedural rule and the state courts' application of it must not rely in any part on federal law. *Id.* at 732-33.  To be adequate,

9

a state procedural rule must be "'firmly established' and 'regularly followed'" by the state courts at the time it was applied. *Beard v. Kindler*, 558 U.S. 53, 60-61 (2009).

A petitioner also may procedurally default a claim by failing to raise the claim in state court, and pursue the claim through the state's "ordinary appellate review procedures," if, at the time of the federal habeas petition, state law no longer allows the petitioner to raise the claim. *Williams*, 460 F.3d at 806 (quoting *O'Sullivan*, 526 U.S. at 848); *see also Baston v. Bagley*, 282 F. Supp. 2d 655, 661 (N.D. Ohio 2003) ("Issues not presented at each and every level [of the state courts] cannot be considered in a federal habeas corpus petition."). Under these circumstances, while the exhaustion requirement is technically satisfied because there are no longer any state-court remedies available to the petitioner, the petitioner's failure to have the federal claims fully considered in the state courts constitutes a procedural default of those claims, barring federal habeas review. *Williams*, 460 F.3d at 806 ("Where state court remedies are no longer available to a petitioner because he or she failed to use them within the required time period, procedural default and not exhaustion bars federal court review."); *see also Gray v. Netherland*, 518 U.S. 152, 161-62 (1996) ("Because the exhaustion requirement 'refers only to remedies still available at the time of the federal petition,' . . ., it is satisfied 'if it is clear that [the habeas petitioner's] claims are now procedurally barred under [state] law' . . . ." (internal citations omitted)).

Furthermore, to "fairly present" a claim to a state court, a petitioner must assert both its legal and factual basis. *Williams*, 460 F.3d at 806 (citing *McMeans v. Brigano*, 228 F.3d 674, 681 (6th Cir. 2000)). Most importantly, a "'petitioner must present his claim to the state courts

as a federal constitutional issue - not merely as an issue arising under state law.'" *Id.* (quoting *Koontz v. Glossa*, 731 F.2d 365, 368 (6th Cir. 1984)).

A petitioner may overcome procedural default by demonstrating cause for the default and actual prejudice that resulted from the alleged violation of federal law, or that there will be a "fundamental miscarriage of justice" if the claim is not considered. *Coleman*, 501 U.S. at 750. "'[C]ause' under the cause and prejudice test must be something external to the petitioner, something that cannot be fairly attributed to him." *Id.* "[T]he existence of cause for a procedural default must ordinarily turn on whether the prisoner can show that some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule." *Id.* "A fundamental miscarriage of justice results from the conviction of one who is 'actually innocent.'" *Lundgren v. Mitchell*, 440 F.3d 754, 764 (6th Cir. 2006) (citing *Murray v. Carrier*, 477 U.S. 478, 496 (1986)).

## C.    Cognizability

To the extent that claims asserted in federal habeas petitions allege state-law violations, they are not cognizable on federal habeas review and should be dismissed on that basis. "It is not the province of a federal habeas court to reexamine state-court determinations on state-law questions. In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States." *Estelle v. McGuire*, 502 U.S. 62, 68 (1991) (citing 28 U.S.C. § 2241); *see also Lewis v. Jeffers*, 497 U.S. 764, 780 (1990) ("[F]ederal habeas corpus relief does not lie for errors of state law."); *Engle v. Isaac*, 456 U.S. 107, 121 n.21 (1982) ("We have long recognized that a 'mere error of state law' is not a denial of due process.") (citation omitted)).

11

Moreover, "a state court's interpretation of state law, including one announced on direct appeal of the challenged conviction, binds a federal court sitting in habeas corpus." *Bradshaw v. Richey*, 546 U.S. 74, 76 (2005) (citing *Estelle*, 502 U.S. at 67-68).  A federal habeas court does not function as an additional state appellate court reviewing state courts' decisions on state law or procedure.  *Allen v. Morris*, 845 F.2d 610, 614 (6th Cir. 1988).

State-court rulings on issues of state law may, however, "rise to the level of due process violations [if] they 'offend[] some principle of justice so rooted in the traditions and conscience of our people as to be ranked as fundamental.'" *Seymour v. Walker*, 224 F.3d 542, 552 (6th Cir. 2000) (quoting *Montana v. Egelhoff*, 518 U.S. 37, 43 (1996)).  But they must be "so egregious that [they] result in a denial of fundamental fairness."  *Bugh v. Mitchell*, 329 F.3d 496, 512 (6th Cir. 2003).  Fundamental fairness under the Due Process Clause is compromised where "the action complained of . . . violates those 'fundamental conceptions of justice which lie at the base of our civil and political institutions,' . . . and which define 'the community's sense of fair play and decency.'" *Dowling v. United States*, 493 U.S. 342, 352 (1990) (internal citations omitted).  Courts, therefore, "'have defined the category of infractions that violate 'fundamental fairness' very narrowly.'"  *Id.* (quoting *Wright v. Dallman*, 999 F.2d 174, 178 (6th Cir. 1993)).

### ANALYSIS

### A.     First Ground for Relief:  *Trial-Court Error / Evidentiary Ruling*

For his first ground for relief, Roundtree argues the trial court erred in excluding evidence at trial that was "critical" to his theory of self-defense.  (Doc. No. 10 at 11.)  Specifically, he states the court erred in ruling that defense witnesses could not testify about Rodriguez's threats to harm him on the ground the statements were inadmissable hearsay.  (Doc.

No. 10 at 11, 16-18.)  Respondent contends this claim is not cognizable on federal habeas

review.  (Doc. No. 8 at 10.)

The last state court to address this claim was the court of appeals on direct review, which

stated:

{¶ 5} In support of his first assignment of error, appellant asserts that the trial court erred by sustaining the state's objections to several statements made by defense witnesses.

{¶ 6} We note that evidentiary determinations are within the broad discretion of the trial court and are subject to review for an abuse of that discretion. *State v. Maurer*, 15 Ohio St.3d 239, 473 N.E.2d 768 (1984).

{¶ 7} Appellant first argues that the trial court erred by striking defense witness Andrea Curry's statement that, before the fight, she heard Rodriguez say to appellant, "Nigga, is you ready to die?" The prosecutor objected to the statement and the court had it stricken from the record as hearsay. Appellant argues that the statement was either an excited utterance or permissible under Evid.R. 801(D)(1) as it was inconsistent with Rodriguez's earlier testimony that he and appellant had exchanged words. First, we find no support for the claim that the statement in question was an excited utterance. Additionally, the fact that Rodriguez had already testified that he and appellant had exchanged words about fighting does not allow Curry's testimony as an exception to hearsay.

{¶ 8} Appellant also argues that the same error occurred two more times during trial: once when witness Nicholas Willis testified that he heard Rodriguez ask appellant, "Are you ready?" before the fight and again when appellant testified that before the fight Rodriguez said, "I'm going to kill you." Appellant simply states that the same rationale as set forth in support of Curry's statement also supports Willis' testimony. As to Willis, appellant argues that the statement was not hearsay because Rodriguez had testified earlier to having said the same thing. As to appellant stating that Rodriguez said he was going to kill him, appellant asserts the statement should have been allowed under the excited utterance exception set forth in Evid.R. 803(2). Upon consideration, we find that Willis' statement constituted hearsay even though Rodriguez had earlier testified to having made the statement. As to appellant's testimony that Rodriguez said he was going to kill him, appellant provides no argument in support of the claim that the statement was an excited utterance as defined in Evid .R. 803(2) and we find it to be without merit.

13

{¶ 9} Appellant also asserts that Toledo Police Officer Donald O'Brien should not have been permitted to testify on cross-examination that witnesses had told him appellant walked into the bar and confronted Rodriguez. The record reflects that defense counsel objected when, in response to his own question, the officer stated that Amanda and several other people commented that appellant entered the bar and confronted Rodriguez. After a lengthy discussion at the bench, the trial court overruled counsel's objection to the officer's response. When cross-examination resumed, counsel asked the officer the same question. Appellant has not provided any authority to support his claims that the disputed testimony was non-hearsay and therefore admissible.

*Roundtree*, 2015 WL 3617943, at *1-2.

Generally, "alleged errors in evidentiary rulings by state courts are not cognizable in federal habeas review." *Moreland v. Bradshaw*, 699 F.3d 908, 923 (6th Cir. 2012); *see also Coleman v. Mitchell*, 244 F.3d 533, 542 (6th Cir. 2001) (noting that federal habeas courts "do not pass upon 'errors in the application of state law, especially rulings regarding the admission or exclusion of evidence.'" (quoting *Cooper v. Sowders*, 837 F.2d 284, 286 (6th Cir. 1988)). Federal habeas courts presume that state courts correctly interpret state evidentiary law in their evidentiary rulings. *Small v. Brigano*, No. 04-3328, 2005 WL 1432898, at *5 (6th Cir. June 17, 2005.) To the extent Roundtree alleges trial-court error based on violations of Ohio evidentiary rules and case law, therefore, this claim is not cognizable on federal habeas review.

Nevertheless, as explained above, state-court evidentiary rulings may "rise to the level of due process violations [if they] 'offend[] some principle of justice so rooted in the traditions and conscience of our people as to be ranked as fundamental.'" *Seymour v. Walker*, 224 F.3d 542, 552 (6th Cir. 2000) (quoting *Montana v. Egelhoff*, 518 U.S. 37, 43 (1996)). Roundtree contends the evidentiary rulings at issue here violated fundamental fairness "by restricting [his] ability to present to the jury the reasons why he acted in self-defense." (Doc. No. 10 at 12.) He cites

14

Supreme Court precedent supporting a defendant's right to present a "complete defense" to a jury, including the right to cross-examine witnesses.  (Doc. No. 10 at 12-16.)  And he explains federal law regarding self-defense claims and whether threatening statements supporting those claims are hearsay.  (Doc. No. 10 at 18-22.)

According to Roundtree, it is undisputed that Rodriguez initiated the confrontation that ended in his stabbing by immediately threatening him when Roundtree entered the bar, and then pursued him outside the bar when Roundtree attempted to "retreat."  (Doc. No. 10 at 17.)  As to the disputed events outside the bar, he summarizes his testimony at trial that:

> [A]s soon as he went outside, he saw Rodriguez with a knife and as a result Roundtree pulled his own knife in self-defense.  Roundtree told Rodriguez to "back off" but Rodriguez swung at Roundtree with a knife Rodriguez possessed.  The two men exchanged blows, each with a knife in their hands. . . .  When an eyewitness informed Rodriguez that he was bleeding, both men stopped.  Rodriguez stopped to tend to his injury, which allowed [Roundtree] to complete his retreat, as [he] got into his car and drove away.

(Doc. No. 10 at 17.)  He notes Rodriguez's girlfriend corroborated this account when she testified that she saw the two men circling one another in the parking lot.  (Doc. No. 10 at 17.)

However, Roundtree's assertion of his self-defense theory does not demonstrate that the challenged rulings resulted in a denial of fundamental fairness.  As Roundtree acknowledges, he presented this defense to the jury.  He also had the opportunity to cross-examine State witnesses. But the jury rejected his defense and found him guilty.  Indeed, the state appellate court recounted in detail the evidence supporting the verdict, as follows:

> {¶ 16} Officer O'Brien, first to respond to the call, testified that the victim's girlfriend stated appellant entered the bar and confronted Rodriguez.

> {¶ 17} Rodriguez testified that on the night of the assault appellant walked into the bar and stared at him. The two men had known each other for several years but were

15

no longer friends. At that time, Rodriguez expected that they would either fight or talk. Rodriguez said, "What's up? You know what time it is." He did not see a knife because appellant's hands remained in his pockets. They stepped outside and appellant's knife came out "right away." Rodriguez testified that he did not have a weapon of any sort and had expected a fistfight. He attempted to take the knife from appellant but was unsuccessful and was stabbed in the back and neck. When Rodriguez saw that he was losing blood, he took his shirt off and tied it around the wound on his neck. He returned inside and waited for an ambulance to arrive. When Officer O'Brien arrived, Rodriguez gave him appellant's name. Rodriguez further testified that appellant drove away before the police responded.

{¶ 18} Amanda Salazar, Rodriguez's girlfriend, testified that the two men began to bicker after appellant arrived and a few minutes after that went outside. Salazar followed them out the door and saw them "going in circles." She then saw appellant with a knife and heard someone scream that Rodriguez had been stabbed. She further testified that Rodriguez does not carry a knife and that she did not see him with one that night.

{¶ 19} Andrea Curry, the bartender on the night of December 15, 2012, testified for the defense. She stated that she saw Rodriguez approach appellant and talk to him. Curry had the impression that Rodriguez wanted to harm appellant. Appellant turned from the bar and walked outside, followed by Rodriguez. Curry did not see anything that happened outside the bar.

{¶ 20} Appellant's friend Nicholas Willis testified that he went to the bar with appellant on the night of December 15. Rodriguez and his girlfriend were already there. After he and appellant entered, Willis heard Rodriguez and appellant yelling back and forth. Willis believed Rodriguez was the aggressor. Willis followed the two men out of the bar and when they got outside saw both Rodriguez and appellant with knives. Willis saw the two men take swings at each other and then saw Rodriguez with blood running down his neck. Rodriguez took his shirt off and held it on his wound before running back into the bar. At that point, Willis and appellant left.

{¶ 21} Appellant testified that after he walked into the bar Rodriguez turned around and the two men made eye contact. They exchanged words and appellant believed Rodriguez was going to fight him or "do some harm to me." Appellant testified that he told Rodriguez he was not trying to fight. The bartender told them they could not fight inside so appellant and his friend Willis walked out the door. After he stepped outside he heard Willis say that Rodriguez had a knife. Appellant testified that he turned around and saw Rodriguez with a knife in his hand. Appellant took his knife out and told Rodriguez to "back up off me" as Rodriguez started to close in on him. Rodriguez swung at him with a knife and appellant immediately swung at Rodriguez

16

with his own knife. After the men exchanged blows, appellant heard his friend tell Rodriguez he was bleeding and stopped. Appellant testified that when he saw Rodriguez holding his hand over his neck he felt as if he was in shock. He turned around, got in his car and drove away. Appellant further testified that he felt threatened by Rodriguez and thought he might be hurt or possibly killed because Rodriguez was holding a knife and "hollering out threats." Appellant did not offer any evidence of injury. He testified that he swung at Rodriguez three times and hit Rodriguez each time.

*Roundtree*, 2015 WL 3617943, at *3-4.

As Respondent points out, Roundtree has not demonstrated that the state court's factual findings are clearly erroneous.  Rather, the record shows that Roundtree fully exercised his right to present his self-defense theory, even without the excluded statements, but the jury chose to believe the State's version of events.  Roundtree's trial was not fundamentally unfair in any respect.

The Court finds, therefore, that Roundtree's first ground for relief does not state a cognizable federal habeas claim.

### B.    Second Ground for Relief:  *Prosecutorial Misconduct*

For his second ground for relief, Roundtree claims the State violated his due process right to a fair trial when the prosecutor improperly told the jury during closing argument "that they had to ignore what happened inside the bar" between him and Rodriguez.  (Doc. No. 10 at 22-25.)  He alleges the prosecutor's improper "instruction" and "misstatement of the law" undermined his theory of self defense by "prohibit[ting] the jury from looking at all the evidence," including that Rodriguez had "threatened and provoked" him inside the bar before the two fought.  (Doc. No. 10 at 23-24.)  Respondent argues this claim lacks merit.  (Doc. No. 8 at 13-16.)

17

The state appellate court on direct review was the last state court to consider this claim,

reasoning:

> {¶ 28} In support of his fourth assignment of error, appellant claims prosecutorial misconduct. . . .

> {¶ 29} Generally, "prosecutorial misconduct occurs when the prosecutor makes a statement that is improper and the improper statement causes prejudice to appellant." *State v. Stowers*, 6th Dist. Erie No. E 12 055, 2014 Ohio 147, ¶ 39, citing *State v.. Smith*, 14 Ohio St.3d 13, 14, 470 N.E.2d 883 (1984). Prosecutors are generally entitled to considerable latitude in opening and closing arguments. *State v. Ballew*, 76 Ohio St.3d 244, 667 N.E.2d 369 (1996).

> . . .

> {¶ 32} . . . [A]ppellant claims the prosecutor incorrectly stated that the jury must consider the self-defense instruction in light of the victim's and appellant's actions once they were outside when he stated, "Self-defense talks about who the aggressor is. Was [Rodriguez] aggressive inside the bar? Of course he was. But once they got outside that's truly when you must consider the self-defense instruction and you must consider whether or not [Rodriguez] even had a knife."

> {¶ 33} During closing arguments, the prosecution is free to comment upon that which the evidence has shown and any reasonable inferences that can be drawn therefrom. *State v. Lott*, 51 Ohio St.3d 160, 555 N.E.2d 293 (1990). Most significantly, any purported misconduct of counsel during closing arguments must be considered in the context of the entire case to determine if it resulted in actual prejudice to the defendant. *State v. Lorraine*, 66 Ohio St.3d 414, 613 N.E.2d 212 (1993).

> {¶ 34} Appellant provides no explanation as to how he may have been prejudiced by the foregoing statements and simply states they constituted misconduct. Considering appellant's argument in the context of the entire case, this court finds that appellant has demonstrated no instances of prosecutorial misconduct during closing argument or otherwise, and has not shown that he was prejudiced therefrom. Accordingly, appellant's fourth assignment of error is not well-taken.

*Roundtree*, 2015 WL 3617943, at *5-6.

The Supreme Court set forth the standard for claims of prosecutorial misconduct in habeas proceedings in *Darden v. Wainwright*, 477 U.S. 168 (1986).  It held that to prevail on such claims, "it is not enough that the prosecutors' remarks were undesirable or even universally condemned."  *Id*. at 181 (internal quotation marks and citation omitted).  Rather, "'[t]he relevant question is whether the prosecutors' comments 'so infected the trial with unfairness as to make the resulting conviction a denial of due process.'"  *Id*. (quoting *Donnelly v. DeChristoforo*, 416 U.S. 637, 642 (1974)).  *See also United States v. Young*, 470 U.S. 1, 11 (1985) ("Nevertheless, a criminal conviction is not to be lightly overturned on the basis of a prosecutor's comments standing alone, for the statements or conduct must be viewed in context; only by so doing can it be determined whether the prosecutor's conduct affected the fairness of the trial.").

The *Darden* standard "is a very general one, leaving courts 'more leeway . . . in reaching outcomes in case-by-case determinations . . . .'"  *Parker v. Matthews*, 567 U.S. 37, 48 (2012) (quoting *Yarlborough v. Alvarado*, 541 U.S. 652, 664 (2004)).  Courts may consider:  (1) whether the evidence against the defendant was strong; (2) whether the conduct of the prosecution tended to mislead the jury or prejudice the defendant; (3) whether the conduct or remarks were isolated or extensive; and (4) whether the remarks were made deliberately or accidentally.  *Wogenstahl v. Mitchell*, 668 F.3d 307, 328 (6th Cir. 2012).  "The prosecution necessarily has 'wide latitude' during closing argument to respond to the defense's strategies, evidence and arguments."  *Id*. at 329 (quoting *Bedford v. Collins*, 567 F.3d 225, 233 (6th Cir. 2009)).

Applying these standards, the state appellate court's decision rejecting this claim was reasonable.  First, Roundtree mischaracterizes the prosecutor's remarks, and they were neither

misleading nor prejudicial.  Roundtree does not identify the exact language he contests, but the state court quoted this passage from the prosecutor's closing argument:

> Self-defense talks about who the aggressor is. Was [Rodriguez] aggressive inside the bar?  Of course he was.  But once they got outside that's truly when you must consider the self-defense instruction and you must consider whether or not [Rodriguez] even had a knife.

(Doc. No. 9-2 at 361.)  The prosecutor did not "instruct" the jury to "ignore" any evidence in these remarks; he merely asked them to focus on what occurred outside the bar in considering Roundtree's defense of self-defense, which is entirely permissible.  In fact, he specifically noted the jury's obligation to consider all the evidence in evaluating self-defense, stating:  " . . . I submit to you that after you consider *all of the evidence*, both from the State and from the Defense, that there's no way you can find that he's proven by a preponderance of the evidence that he acted in self-defense."  (Doc. No. 9-2 at 198-99 (emphasis added).)  Furthermore, the prosecutor himself discussed the events that occurred inside the bar and before the fight ensued outside during his closing argument, stating:

> So you have to consider was he at fault in that situation?  Sure, [Rodriguez] was aggressive inside.  But who went to the bar in the first place and even went so far as to park on the street?  The evidence that you have before you tells you that one car and one car only was in the parking lot.  That of Amanda Salazar, very recognizable vehicle.  And in comes Mr. Roundtree and his body guard.  Whether or not he intended to fight or wanted to fight, he knew exactly what he was doing when he went into that bar.  He knew Ruben was in there.

(Doc. No. 9-2 at 343.)

Moreover, the trial court was clear in instructing the jury that "[i]n determining whether or not an affirmative defense has been proved by a preponderance of the evidence you should consider *all of the evidence* bearing upon that affirmative defense regardless of who produced

20

it." (Doc. No. 9-2 at 373 (emphasis added).)  And a jury is presumed to follow the court's instructions.  *See, e.g., Richardson v. Marsh*, 481 U.S. 200, 211 (1987); *Washington v. Hofbauer*, 228 F.3d 689, 706 (6th Cir. 2000).  In fact, the prosecutor repeatedly advised the jury to closely follow the court's jury instruction regarding self-defense.  (*See, e.g*., Doc. No. 9-2 at 342 (". . . I ask for you to listen very carefully to the self-defense instruction.").)

Roundtree has not shown that the state appellate court's decision was contrary to, or an unreasonable application of, *Darden* or any other Supreme Court precedent.  The Court finds Roundtree's second ground for relief meritless, therefore, and recommends that it be denied.

### CONCLUSION AND RECOMMENDATION

For the reasons stated above, the Court recommends that Petitioner Antonio Roundtree's petition for writ of habeas corpus (Doc. No. 1) be DISMISSED in its entirety, because the claims raised are non-cognizable and/or meritless.


Date:   November 20, 2017                    *s/ Jonathan Greenberg*
                                             Jonathan D. Greenberg
                                             United States Magistrate Judge


### OBJECTIONS

**Any objections to this Report and Recommendation must be filed with the Clerk of Court within fourteen (14) days after the party objecting has been served with a copy of this Report and Recommendation.  28 U.S.C. § 636(b)(1). Failure to file objections within the specified time may waive the right to appeal the District Court's order.  *See United States v. Walters*, 638 F.2d 947 (6th Cir. 1981);  *Thomas v. Arn*, 474 U.S. 140 (1985), *reh'g denied*, 474 U.S. 1111 (1986).**